**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SANTOS N.,[1]

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[2]

Defendant.

Case No. 5:25-cv-00482-PD

**MEMORANDUM OPINION AND ORDER REVERSING AGENCY DECISION AND REMANDING**

Plaintiff challenges the denial of his application for Social Security Disability Insurance Benefits. For the reasons stated below, the decision of the Administrative Law Judge is reversed, and the Court remands this matter on an open record for further proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the United States Judicial Conference.

[2] Frank Bisignano is the current Commissioner of Social Security and is substituted as Defendant in this suit. *See* 42 U.S.C. § 405(g).

## I. Pertinent Procedural History and Disputed Issues

On January 4, 2022, Plaintiff protectively filed an application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), alleging disability beginning on December 31, 2013. *See* Administrative Record ("AR") 104-05.[3] Plaintiff's application was denied administratively on August 19, 2022, and upon reconsideration on October 2, 2022. *See* AR 153-57, 164-69. He then requested a hearing, *see* AR 171, which the Administrative Law Judge ("ALJ") held on February 12, 2024, *see* AR 67-102. Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. *See id.* On March 29, 2024, the ALJ issued a decision finding that Plaintiff had not been under a disability as defined by the SSA, from December 31, 2013, through the date he was last insured. *See* AR 34-45.

The ALJ followed the five-step sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated in Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA and had not engaged in substantial gainful activity during the relevant period. *See* AR 36.

At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical spine sprain, degenerative changes of the lumbar spine status-post fusion, and degenerative changes and tendinitis of the bilateral shoulders (20 CFR 404.1520(c))." AR 37. At step three, the ALJ found that

---

[3] Citations to the AR are to the record pagination. For all other docket citations, the Court uses the pagination generated by its Case Management/Electronic Case Filing system.

Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). *See* AR 21.

Before proceeding to step four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 416.967(a) with the following exertional limitations:[4]

> [H]e can lift and/or carry twenty pounds occasionally and ten pounds frequently. [He] can also stand and/or walk for four hours out of an eight-hour workday with regular breaks and can sit for six hours out of an eight-hour workday with regular breaks. Additionally, he can push and/or pull within the weight limits indicated for lifting and carrying. [He] can also frequently reach overhead with the nondominant left upper extremity. Further, he can never climb ladders, ropes, or scaffolds. [He] also cannot work near heavy moving machinery or at unprotected heights. In addition, [he] requires a single-point cane for walking distances greater than ten yards.

AR 38. At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a motorcycle mechanic. *See* AR 43-44. At step five, the ALJ found that Plaintiff could perform the following jobs that, according to the vocational expert's testimony, exist in significant numbers in the national economy: document preparer, ticket counter, and telephone quotation clerk. *See* AR 45. Thus, the ALJ found that Plaintiff was not disabled during the relevant period. *See id*. On January 10, 2025, the Appeals Council denied

[4] Section 416.967(a) defines "sedentary" work as follows: "work involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."

Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. *See* AR 1-8.

On February 21, 2025, Plaintiff initiated this appeal of the ALJ's decision. *See* Dkt. No. 1. The parties dispute the following two issues:

(1) whether the jobs that the ALJ found Plaintiff capable of performing were obsolete; and

(2) whether the ALJ properly considered Plaintiff's testimony concerning his ability to read and write and concerning his subjective-symptom testimony.

*See* Dkt. No. 15 at 6-13; Dkt. No. 21 at 3-11.

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[5]

---

[5] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

## III. Discussion

### A. The ALJ Erred in Evaluating Plaintiff's Testimony Concerning His Inability to Read and Write

Plaintiff contends that the ALJ erred at step five by failing to properly consider his testimony that he could not read or write in any language. *See* Dkt. No. 15 at 12-13; Dkt. No. 23 at 5-8. For the reasons explained below, the Court agrees.

#### 1. Pertinent Background

In a disability report submitted in support of his application for disability benefits, Plaintiff stated that he could not "speak or understand English." AR 347. But in response to questions that immediately followed, he gave contradictory responses, stating that he could "read and understand English" and that he could "write more than [his] name in English." AR 347.

At the February 12, 2024 hearing before the ALJ, Plaintiff, who was born in Mexico, *see* AR 349, stated that he understood and could speak English. *See* AR 69. He testified that he had last worked in 2013 as a motorcycle mechanic. *See* AR 74. He also testified about his various impairments and their effect on his ability to work or care for himself. *See* AR 72-85. He was not questioned about his ability to read or write.

Thereafter, the vocational expert testified. *See* AR 88. The ALJ

---

Cir. 2020) ("a nonprecedential disposition is not appropriately used . . . as the pivotal basis for a legal ruling by a district court").

presented the vocational with a hypothetical individual having Plaintiff's RFC, which consisted solely of physical limitations, and asked whether such an individual could perform his past relevant work as a motorcycle mechanic. *See* AR 89-90. The vocational expert responded that those limitations would rule out Plaintiff's past relevant work but identified three jobs that such an individual could perform – namely, document preparer (Dictionary of Occupational Titles ("DOT") 249.587-018), ticket counter (DOT 219.587-010), and telephone quotation clerk (DOT 237.367-046).[6] *See* AR 91. The ALJ did not question the vocational expert about the level of literacy required to perform any of those jobs. Plaintiff's counsel then questioned the vocational expert, but likewise did not ask the vocational expert about the level of literacy required to perform those three identified jobs.

After his counsel presented closing remarks, Plaintiff addressed the ALJ and testified that he did not know how to read or write in either English or Spanish. *See* AR 99-100. He then explained that he had attended school in Mexico but had completed only the sixth grade.[7] *See* AR 100. The following

---

[6] As to the job of document preparer, the ALJ questioned the vocational expert concerning how the job was performed in the modern economy and how that performance differed from the job's description in the DOT. *See* AR 92-93. The vocational expert described how the job is currently performed in the modern economy and confirmed that his estimate of the number of such jobs existing in the national economy was accurate in light of those current job duties. *See* AR 94.

[7] Plaintiff displayed some confusion when responding to the ALJ's question about his education level. Initially, he stated that he had attended high school, but then corrected himself to say "one lower than high school," before finally explaining that he had completed only the sixth grade. AR 100. The record also reflects that Plaintiff made additional inconsistent statements concerning his education. *See* AR 349 (disability report indicating that he completed eighth grade), 2330 (consultative examiner's report reflecting Plaintiff stated he had completed ninth grade) (AR 2330), 2393 (consultative examiner report reflecting that plaintiff stated that he had completed high school). The ALJ did not discuss any of these conflicting statements in his decision.

exchange then occurred:

Counsel: Judge, did he say, Mr. – sorry to interrupt. Did you say that you can or cannot write in English or in – excuse me, Spanish?

Plaintiff: I don't know how to write in Spanish, in English, in no language. I don't know how to write. I don't know how to read.

Counsel: You can't read in Spanish either?

Plaintiff: No.

Counsel: Maybe –

Plaintiff: I don't know – I can read, pero, I don't know how to stop. I don't know how to read. I try to read the Bible, little by little, but I can't. I didn't –

ALJ: Can you read a little bit of the Bible?

Plaintiff: I never went to school.

ALJ: Can you read a little bit of the Bible?

Plaintiff: I've been reading a little bit, once in a while.

ALJ: You can read a little bit once in a while?

Plaintiff: Yeah. Pero, they got to help me out. Because I don't even –

ALJ: Do you –

Plaintiff: – I don't understand. I don't understand it. You know, I don't –

ALJ: Do you have any –

Plaintiff: – how to write and read.

ALJ: Okay.

Plaintiff: No. Just mama, papa, pero, no like read things. No, I can't. I'm sorry. I never went to school.

AR 100-01. When asked whether he had learned to read and write in school,

Plaintiff responded that he had not, explaining that the teachers in Mexico "ke[pt] passing" him to the next grade level because there were not enough teachers and because "[t]hey d[idn't] care about nobody." AR 100-02.

The ALJ did not conduct any further questioning and instead closed the hearing. *See* AR 102.

**2. The ALJ's Decision**

As noted above, at step five, the ALJ, relying on the vocational expert's testimony, concluded that Plaintiff had the RFC to perform three jobs existing in significant numbers in the national economy – namely, document preparer, ticket counter, and telephone quotation clerk. *See* AR 44-45. In doing so, the ALJ found that Plaintiff had a marginal education, as defined by 20 C.F.R. § 404.1564.[8] AR 44. The ALJ made no definitive finding concerning Plaintiff's literacy. Instead, the ALJ acknowledged Plaintiff's testimony that he could not read but noted that "he thereafter clarified that he is able to read certain items such as the Bible." AR 44. The ALJ did not address Plaintiff's testimony that he could not write in any language.

**3. Applicable Law**

At step five, after the ALJ has assessed the claimant's RFC and ruled out the claimant's past relevant work, "the burden shifts to the agency to prove that 'the claimant can perform a significant number of other jobs in the national economy.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). When, as here, evidence is presented suggesting that a claimant is illiterate, the ALJ "must assess" the claimant's literacy "in determining whether [he] can

[8] "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2).

perform work pursuant to the regulations."[9] *Yacoub v. Colvin*, No. 1:14-CV-00884-SKO, 2016 WL 541407, at *12 (E.D. Cal. Feb. 11, 2016) (citing, *inter alia*, 20 C.F.R. §§ 404.1564(b), 416.964(b)). Indeed, the Ninth Circuit has recognized that "[t]he ability to communicate is an important skill to be considered when determining what jobs are available to a claimant" and that "[i]lliteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001); *see* 20 C.F.R. §§ 404.1564(b)(5), 416.695(b)(5) ("[W]e consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do"). Moreover, "[t]he Commissioner bears the burden of establishing that [the claimant] is literate. *Silveira v. Apfel*, 204 F.3d 1257, 1262 (9th Cir. 2000) (per curiam).

A claimant is not, however, per se disabled by virtue of being illiterate. *See Pinto*, 249 F.3d at 847. But when an ALJ "relies on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted [language or literacy] limitations, the ALJ must definitively explain this deviation." *Id.* Failure to do so constitutes reversible error. *See id.* at 847-48.

**4. Analysis**

The ALJ failed to properly evaluate Plaintiff's testimony that he could not read or write in any language. Despite that testimony, the ALJ made no definitive finding concerning Plaintiff's literacy. Although Defendant argues that the ALJ reasonably found that Plaintiff had a marginal education based

---

[9] "Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. § 404.1564. The Ninth Circuit has clarified that a claimant is considered illiterate if he demonstrates that he is either illiterate or unable to communicate in English or both. *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000)

his completion of six years of school in Mexico, *see* Dkt. No. 21 at 10; *see also* 20 C.F.R. § 404.1564(b)(2) (claimants who complete sixth grade are generally considered to have marginally education), that finding, even if reasonable, did not establish that Plaintiff was literate, *see Silveira*, 204 F.3d at 1259, 1261-62 (remanding for ALJ to make an express finding regarding claimant's literacy after claimant testified that he was illiterate, despite having completed six years of education in Mexico); 20 C.F.R. § 404.1564(b) ("[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower."). Because literacy is a vocational factor considered at step five and because the Commissioner bears the burden at that step, the ALJ could not resolve the ambiguity by simply finding that Plaintiff had a marginal education.

Moreover, Plaintiff's testimony, at a minimum, constituted evidence indicating that his numerical grade level did not reflect his actual educational ability. *See* 20 C.F.R. § 404.1564(b) (permitting use of claimant's "numerical grade level to determine [his] educational abilities" only when "there is no other evidence to contradict it"). Indeed, he testified that he could not read or write in any language and that his teachers in Mexico did not teach students but merely passed them to the next grade regardless of their mastery of the prior grade level material. *See* AR 100-02. Accordingly, in light of the conflicting evidence regarding Plaintiff's literacy, the ALJ was required to make an express finding as to whether Plaintiff was literate before relying on occupations whose DOT descriptions include language-development requirements.[10]

To the extent Defendant contends that the ALJ's reference to Plaintiff's purported ability to read the Bible constituted a literacy finding, Defendant is

[10] The Court discusses the language-development requirements of the relevant jobs below.

mistaken because any such finding lacks substantial evidentiary support. The ALJ's assertion that Plaintiff was able to read the Bible was based on Plaintiff's isolated testimony that he "tr[ied] to read the Bible, little by little . . . once in a while." AR 100. Standing alone, however, that testimony did not suggest that Plaintiff was literate because he immediately explained that, despite his attempts to read the Bible, he could not do so without the help of others. *See* AR 101-02 (Plaintiff testifying that he tried to read the Bible but could do so only when "they help[ed] [him] out" because he could not read and, therefore, did not understand it); *Garrison v. Colvin*, 759 F.3d 995, 1017, n.23 (9th Cir. 2014) (ALJ may not "cherry-pick" from mixed evidence to support denial of benefits); *see also Jeanett M. v. Kijakazi*, No. 21-CV-00587-JSC, 2022 WL 1239344, at *2 (N.D. Cal. Apr. 27, 2022) (ALJ erred by "focus[ing] only on Plaintiff's efforts to leave her home more often, while ignoring that she only did so when the environment was contained and safe"). Moreover, even if Plaintiff could read the Bible "little by little . . . once in a while," AR 100, the ALJ elicited no testimony and made no finding concerning the meaning of the statement. *See Yacoub,* 2016 WL 541407, at *13 (ALJ could not base literacy finding on claimant's testimony that she could read and write in English only "very little" because "nothing in the record explain[ed], and the ALJ did not make any finding describing, what 'very little' means").

Defendant's attempts to supplement the ALJ's decision with evidence from the record to support a finding that Plaintiff was literate are not persuasive. *See* Dkt. No. 21 at 9-10 (arguing that Plaintiff's ability to obtain driver's license, his past skilled work as motorcycle mechanic, and his disability-report statements effectively demonstrate that he could read and write).[11] As an initial matter, the Court cannot consider the evidence on

[11] To the extent Defendant merely cites this evidence to show that the ALJ's finding that Plaintiff had a marginal education, there is no need to consider it because, as explained above, that finding was not sufficient to support a finding that Plaintiff

which Defendant relies because the ALJ never cited it – either in finding that Plaintiff had a marginal education or in discussing his purported ability to read the Bible. *See Pinto*, 249 F.3d at 847 ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))); *Pourdehghan v. Colvin*, No. 2:15-cv-07975 (KS), 2016 WL 4534005, at *6 (C.D. Cal. Aug. 29, 2016) (declining to consider documents in record cited by Commissioner that purportedly reflected claimant's "proficient English writing skills" in support ALJ's finding that claimant could effectively communicate in English because ALJ "did not cite any of these documents").

In any event, none of the evidence on which Defendant relies withstands scrutiny. First, the fact that Plaintiff obtained a driver's license does not mean that he was literate.[12] *See Saucedo v. Berryhill*, No. 2:16-CV-07820-SK, 2017 WL 8161080, at *2 (C.D. Cal. Nov. 20, 2017) ("[N]either Plaintiff's testimony that he can read and write some English nor his ability to pass the U.S. citizenship examination establishes literacy" and, thus, remand was required for ALJ to make express finding regarding literacy); *Pourdehghan*, 2016 WL 4534005, at *5 ("The ability to take and pass the U.S. citizenship examination is not dispositive on the issue of [the claimant's] literacy."); *Mui Si Voong v. Astrue*, 641 F. Supp. 2d 996, 1008 (E.D. Cal. 2009) (finding that although "plaintiff passed the citizenship test and obtained a driver's license[,] [this] did not mean that she could speak and read English, even at language level 1," as defined in the DOT); *Yacoub v. Colvin*, No. 1:14-

---

was literate. Consequently, the ALJ's marginal-education finding did not obviate the need for the ALJ to make an express finding concerning Plaintiff's literacy.

[12] This is not to say that passing a driver's license test is irrelevant to whether Plaintiff is literate; rather, that fact alone is insufficient to establish literacy. *See Garcia v. Colvin*, No. 1:14-CV-1744-JLT, 2016 WL 8674245, at *6 (E.D. Cal. Sept. 30, 2016).

CV-00884-SKO, 2016 WL 541407, at *14 (E.D. Cal. Feb. 11, 2016) (same when plaintiff had passed driver's license test). And indeed, the California Department of Motor Vehicles website states one of the accommodations it provides is an "audio" test option.[13] *See* Cal. Dep't of Motor Vehicles, https://www.dmv.ca.gov/portal/driver-education-and-safety/special-interest-driver-guides/people-with-disabilities/ (last visited July 15, 2026).

Second, Plaintiff's ability to perform his past relevant work as a motorcycle mechanic is insufficient, on the current record, to show that he is literate. Although Defendant assumes that Plaintiff must have undergone specialized training that necessarily involved reading and writing in order to perform his past work as a mechanic, *see* Dkt. No. 21 at 9, Plaintiff stated in his disability report that he had no specialized job training and had not attended a trade or vocational school. AR 349. What's more, Plaintiff provided inconsistent answers when asked if his past work involved writing, completing reports, or similar duties. *Compare* AR 350 (Plaintiff stating that his past work involved such activities), *with* AR 368 (Plaintiff stating that his past work did not involve such activities). The ALJ never addressed – let alone resolved – those conflicting statements. Moreover, based on the questions posed on the forms that Plaintiff completed, it is unclear what "writing" or "completing reports" entailed. Indeed, such a broad question could encompass tasks as simple as writing the price of a given service. Given these facts, Defendant's argument that Plaintiff's past work establishes that he is literate is based on little more than speculation.

Third, Defendant's reliance on Plaintiff's responses in his disability

---

[13] There is no evidence in the record concerning whether Plaintiff may have received any accommodation when taking his driver's license test. On remand, the ALJ, if necessary, should supplement th record by obtaining Plaintiff's testimony (and any available relevant documentation) to determine whether he received any such accommodations.

report concerning his ability to read and write in English is misplaced. *See* Dkt. No. 21 at 9. The ALJ never cited the disability report and failed to make any finding that Plaintiff was literate, and as noted above, the Court cannot affirm based on ground that the ALJ failed to identify. But even putting that aside, the responses on which Defendant relies conflict with Plaintiff's other responses. To be sure, Plaintiff answered, "Yes," in response to the disability report's questions, "Can read and understand English?" and "Can you write more than your name in English?" AR 347. But in response to the question immediately preceding those questions, Plaintiff stated that he could not speak or understand English. AR 347. More importantly, as noted above, when directly questioned at the hearing, he testified that he could not read or write in any language. AR 100-01. Given those unresolved conflicting statements, there is no basis for the Court to affirm based on Plaintiff's disability-report responses. *See Velasquez v. Colvin*, No. 2:15-CV-05655-VEB, 2016 WL 4487822, at *5 (C.D. Cal. Aug. 25, 2016) (ALJ erred in relying claimant's response to disability-report question that she could speak and understand English without asking claimant to "elaborate on" her response when "the record contained numerous reasons to question the scope of [claimant's] language skills . . . [including her testimony] that she could only read, write, or speak 'a little' English"), *judgment entered*, 2016 WL 4493867 (C.D. Cal. Aug. 25, 2016).

Finally, the ALJ's error was not harmless. As noted above, Plaintiff testified that he could not read or write in any language. Each of the three jobs that the vocational expert testified Plaintiff could perform require either Language Development Level 2 or Language Development Level 3. *See* DOT 249.587-018 (stating that "document preparer" requires Language Development Level 2); DOT 219.587-010 (stating that "ticket checker" requires Language Development Level 3); DOT 237.367-046 (stating that

"telephone quotation clerk" requires Language Development Level 3). Language Development Level 2 requires the ability to "[r]ead at rate of 190-215 words per minute" and "[r]]ead[ing] adventure stories and comic books, looking up unfamiliar words a in dictionary for meaning, spelling, and pronunciation" and "[r]ead instructions for assembling model cars and airplanes." U.S. Dep't of Labor, Dictionary of Occupational Titles app. C, § III, Language Development Level 2 (4th ed. rev. 1991) (Westlaw). It also requires the ability to "[w]rite compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs." *Id.* Language Development Level 3 requires even more advances skills, including the ability to "[r]ead safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work," and write "reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech." *Id.*, § III, Language Development Level 3.

Neither the vocational expert nor the ALJ discussed whether Plaintiff's literacy or lack thereof would prevent him from performing the three jobs that the ALJ found him capable of performing. And nothing in the ALJ's decision – which mentions only Plaintiff's purported ability to read the Bible – suggests that Plaintiff could perform work requiring Language Development Level 2 language skills, let alone Language Development Level 3 skills. Although Defendant suggests that the ALJ's finding that Plaintiff could perform the three jobs was nevertheless reasonable because they are unskilled, *see* Dkt. No. 21 at 10, that suggestion is based on nothing more than speculation. After all, Defendant is not a vocational expert and, therefore, has no expertise concerning whether someone like Plaintiff – who may in fact be illiterate – could perform any of the identified jobs or that limitation might reduce the number of such jobs available in the national

economy. To be sure, it is possible that these jobs can be performed by someone who cannot read or write. But the Court cannot fill that evidentiary gap through speculation. Instead, the proper course is for the ALJ to make an express literacy finding and, if necessary, obtain testimony from a vocational expert regarding whether an illiterate person can perform the identified jobs (or any others) and, if so, how that additional limitation would affect the number of such jobs in the national economy. *See Ni Ni Yu v. Saul*, No. 18-CV-07792-VC, 2019 WL 6126866, at *2 (N.D. Cal. Nov. 19, 2019) (rejecting Commissioner's argument that, notwithstanding DOT's language requirements, identified occupations were unskilled and required little English communication and could be performed by claimant who did not speak English because that determination must be made by a vocational expert).

Accordingly, remand is warranted on this claim of error.

**B. Remaining Issues and Remedy**

Plaintiff also contends that the ALJ's decision is not supported by substantial evidence because the jobs that the vocational expert identified are obsolete and because the ALJ failed to properly evaluate his subjective-symptom testimony. *See* Dkt. No. 15 at 6-13. Because the Court concludes that this case be remanded on an open record, the Court declines to address Plaintiff's other claims of error. *Google LLC v. Oracle America, Inc.*, 591 U.S. 1, 20 (2021) (appellate courts "should not answer more than is necessary to resolve the parties' dispute" on appeal); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (declining to address issues not relevant to decision to remand case); *Lambert*, 980 F.3d at 1278 ("We have no occasion to reach Lambert's other assignments of error, as the record may change on remand.").

## IV. Conclusion

For these reasons, the ALJ's decision is reversed, and the case is remanded on an open record for further proceedings. .

Dated: July 30, 2026

Patricia Donahue

HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE